UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LINSCO/PRIVATE LEDGER          )
CORPORATION,                   )
                               )
            Plaintiff,         )
                               )      No. 3:07-0183
v.                             )      JUDGE ECHOLS
                               )
DAVID L. MAURICE and           )
LOIS CARRIER,                  )
                               )
            Defendants.        )

## MEMORANDUM

Pending before the Court is Plaintiff's Motion for Preliminary Injunction and Expedited

Hearing (Docket Entry No. 3), to which Defendants responded in opposition (Docket Entry No. 25)

and Plaintiff filed a reply (Docket Entry No. 29).

## I. FACTS

Plaintiff Linsco/Private Ledger Corporation ("LPL") is a California independent brokerage

firm with headquarters in Boston, Massachusetts. Plaintiff is a Broker/Dealer duly registered with

the National Association of Securities Dealers ("NASD") and other regulatory authorities.

Defendants David Maurice and Lois Carrier are Tennessee residents who maintain business offices

in Kingport, Tennessee. Maurice and Carrier are licensed Certified Financial Planners who managed

client investments as representatives of LPL. Both Maurice and Carrier signed Representative

Agreements with LPL; Carrier in 1993 and Maurice in 1994. Both had worked as financial planners

elsewhere before they associated with LPL, (Docket Entry No. 16, Statement of Claim at 1), and

1

there is no evidence before the Court that Maurice and Carrier did not enter into the Representative

Agreements freely. These agreements contain arbitration clauses providing:

> Any disputes under the Agreement, including interpretation of its terms and conditions, and any rights and obligations of the parties hereunder shall be arbitrated in accordance with the Rules of the National Association of Securities Dealers with such arbitration to occur in Boston, Massachusetts, or alternatively, in Los Angeles California, if Linsco/Private Ledger so elects.

(Docket Entry Nos. 14 & 15, § 7(C).)

Maurice and Carrier became embroiled in a bitter dispute with their firm partners, Michael

Gilbert and Pamela Benzer over business matters. On November 13, 2006, Maurice and Carrier filed

a Statement of Claim against LPL with the NASD Dispute Resolution Office in New York, New

York. (Docket Entry No. 16.) The Statement of Claim included causes of action against LPL for

failure to supervise Gilbert and Benzer, failure to abide by the terms of a modified split fee

agreement, willful and intentional violation of the express instructions of LPL's own compliance

auditors, failure to protect the rights of investor clients, and breach of contract. Maurice and Carrier

sought $7 million in income loss and $50 million in punitive damages plus attorney's fees and costs.

LPL denies the allegations in the Statement of Claim. (Docket Entry No. 13, Amended Aff. of David

Freniere ¶ 5.)

Applying procedures set forth in the NASD Code of Arbitration Procedure ("the NASD

Code"), the Senior Case Administrator, JoAnne Sorrentino, acting on behalf of the Director of

Arbitration, identified the arbitration forum as Charlotte, North Carolina, in accordance with Rule

10315 of the NASD Code [1] In setting the initial hearing location, Ms. Sorrentino stated that "[a]

---

[1]Rule 10315 provides in part that the "Director shall determine the time and place of the first meeting of the arbitration panel and the parties, whether the first meeting is a pre-hearing conference or a hearing . . . The arbitrators shall determine the time and place for all subsequent meetings[.]"

2

final decision regarding the initial hearing location will be rendered before the Panel is appointed."
(Complaint, Ex. 4.)

Counsel for the Defendants in the pending NASD matter, Jeffrey B. Kelvin, attests that on or about December 21, 2006, he received a telephone call from Joan Pendergast, the NASD Case Administrator assigned to Defendants' Statement of Claim. (Docket Entry No. 27, Kelvin Decl. ¶ 3.) Pendergast told Kelvin that the arbitration would take place in one of two locations: Charlotte, North Carolina, or Nashville, Tennessee. Of those two options, Kelvin informed Pendergast that Maurice and Carrier would prefer Nashville as the situs of the arbitration. (Id.) Kelvin further attests that Maurice and Carrier were not offered the option to choose Boston, Massachusetts as a forum for the arbitration, and that NASD made the decision to hold the arbitration in Nashville, not Maurice or Carrier. (Id. ¶¶ 5-6.)

Pendergast then sent a letter which informed Plaintiff LPL as follows:

> Upon discussion with the Claimant, it appears that the situs requested by the Claimant was Nashville, TN and not Charlotte, NC. Situs is determined by the location where the Claimant resided at the time the dispute at issue arose, which in this case was Tennessee. Accordingly, the hearing location for this case has been changed to Nashville, TN and has been reassigned to the below named case administrator.

(Docket Entry No. 17.)[2]

---

[2] The Court is unsure why the Case Administrator offered Defendants a forum in the state of their residence, Tennessee. Rule 13213(a)(1) provides that, in "cases involving an associated person, the Director will generally select the hearing location closest to where the associated person was employed at the time of the dispute[,]" but "[i]n cases involving members only or more than one associated person, the Director will consider a variety of factors, including: [t]he parties' signed agreement to arbitrate, if any; [w]hich party initiated the transaction or business in issue; and [t]he location of essential witnesses and documents." The Court did not locate a provision in the NASD

On December 28, 2006, David Freniere, counsel for Plaintiff, sent a letter to Ms. Pendergast objecting to the *ex parte* communication with Defendants and informing Pendergast that Defendants had failed to inform the NASD staff that they had

> agreed, in separate binding written agreements with Linsco . . . that any dispute relating to their contracts with Linsco would be arbitrated in Boston, MA or Los Angeles, CA. <u>Kindly be advised that, pursuant to Section 7(C) of the enclosed Representative Agreements, Linsco elects to have the arbitration hearing occur in Boston, MA. Accordingly, we respectfully request that NASD change the hearing location from Nashville to Boston.</u>

(Docket Entry No. 18, emphasis in original.)

An NASD Senior Attorney, Kevin D. Rosen, then asked for Defendants' response to LPL's request to change the hearing location to Boston. (Docket Entry No. 19.) On January 5, 2007, Mr. Kelvin sent a letter to Mr. Rosen which stated, among other things, that "[b]y the very admission of your own office, [Defendants] have an absolute right to litigate an NASD arbitration matter in their home state, irrespective of some poorly drafted, adhesionary and unenforceable choice of situs clause." (Docket Entry No. 20 at 2.) On behalf of Defendants, Mr. Kelvin "respectfully move[d] that the hearing be held in Nashville, Tennessee." (Id.)

Mr. Freniere, for LPL, sent Mr. Rosen a reply to Defendants' response again asking that the contractual forum selection clause be enforced. (Docket Entry No. 21.) In a January 24, 2007 letter, however, Mr. Rosen indicated that Nashville would remain the location for the initial arbitration hearing and stated: "The parties may raise a request to change the Nashville hearing location with the arbitration panel, once appointed. The arbitration panel has authority to determine the final

---

Code of Arbitration Procedure for Industry Disputes permitting the Director to set the forum in the state of the associated person's residence. Rule 12213 of the NASD Code of Arbitration Procedure for Customer Disputes does provide that the hearing location chosen by the Director will be "closest to the customer's residence at the time of the events giving rise to the dispute."

hearing location under the Code " (Docket Entry No 22.) An arbitration panel was chosen on or about February 21, 2007. (Docket Entry No. 23; Kelvin Decl. ¶ 7.)

LPL filed a Complaint in this Court seeking: (1) a declaratory judgment that the forum selection clause contained in each Defendant's Representative Agreement with LPL is valid and enforceable, and (2) a preliminary and permanent injunction enjoining Defendants from proceeding with arbitration in Nashville, Tennessee. LPL contends arbitration in Nashville would contravene each Defendant's Representative Agreement with LPL, which requires disputes between the parties arising under those Representative Agreements to be arbitrated in Boston, Massachusetts. (Complaint at 1-2.) Because LPL did not elect to proceed with arbitration in Los Angeles, LPL contends any arbitration must proceed in Boston With its Complaint LPL simultaneously filed the instant Motion for Preliminary Injunction.

The Court held a hearing on the Motion for Preliminary Injunction on March 7, 2007. The parties did not present any additional evidence, but relied on the documents contained within the record The Court heard the arguments of counsel. At the conclusion of the hearing, the Court permitted LPL to file a reply memorandum, and briefing on the Motion is now complete

## II. **STANDARD OF REVIEW**

In deciding whether a preliminary injunction should issue, the Court must consider four factors: "(1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction on the public interest " Tucker v. City of Fairfield, 398 F 3d 457, 461 (6th Cir. 2005).

5

## III. ANALYSIS

### A. Likelihood of success on the merits

LPL contends that the Representative Agreements are valid and enforceable and the parties are bound by their express terms, including the term requiring arbitration to occur in Boston. LPL relies on the Federal Arbitration Act, 9 U.S.C. § 4, which provides in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

Not only does this statute pertain to a party's refusal to arbitrate, but courts have interpreted § 4 to extend to situations in which a party fails to arbitrate in accordance with the terms of the arbitration agreement. Merrill Lynch, Pierce, Fenner & Smith, Inc.v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995).

The Court emphasizes at the outset that, where the arbitration agreement contains a forum selection clause, **only the district court in the selected forum** can issue a § 4 order compelling arbitration in that forum. Management Recruiters Int'l, Inc. v. Bloor, 129 F.3d 851, 854 (6th Cir. 1997); Lauer, 49 F.3d at 327; Snyder v. Smith, 736 F.2d 409, 419-420 (7th Cir. 1984); Bao v. Gruntal & Co., 942 F.Supp. 978, 983 (D.N.J. 1996); Alpert v. Alphagraphics Franchising, Inc., 731 F.Supp. 685, 689 (D.N.J. 1990); Management Recruiters of Albany, Inc. v. Management Recruiters Int'l, Inc., 643 F.Supp. 750, 752 (N.D.N.Y. 1986); Lawn v. Franklin, 328 F.Supp. 791, 793 (S.D.N.Y. 1971) (judicial control of proceedings should emanate from forum district). Under these cases, this Court has no authority under § 4 to compel arbitration in Boston. Only a federal district court sitting

6

in the District of Massachusetts has that authority. "Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." Lauer, 49 F 3d at 327 The "directive of § 4 is mandatory. It clearly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control." Id.

In response to this controlling law raised by the Defendants, LPL states that it "is not seeking to compel arbitration. Rather LPL seeks to enjoin Defendants from proceeding in a manner inconsistent with their agreement. This court has that authority." (Docket Entry No 29, Reply at 7 (emphasis in original).) Yet the cases LPL cites to support its statement recognize that only district courts located in the arbitral forum can compel arbitration, and district courts in other jurisdictions which are asked to compel arbitration should stay their proceedings in deference to the action of the district court in the arbitral forum. See Roe v. Gray, 165 F Supp 2d 1164 (D. Colo 2001); Albert, 731 F Supp. 685 (D N J. 1990); Arnold v. Goldstar Fin. Sys., Inc., 2002 WL 1941546 *7 (N.D. Ill. 2002). LPL relies on Sterling Fin. Inv. Group, Inc. v. Hammer, 393 F.3d 1223, 1225 (11th Cir. 2004), and Bear, Stearns & Co. v. Bennett, 938 F.2d 31 (2d Cir. 1991) in contending that this Court has authority to stop arbitration in Nashville. Both Hammer and Bennett, however, concerned motions to compel arbitration filed within the districts where arbitration was to occur pursuant to the parties' binding arbitration agreements Here, LPL has not filed suit in Boston, where the forum selection clause dictates that arbitration should occur. Instead, LPL has filed suit in Nashville.

Thus, the Court is left to wonder what LPL asks this Court to do and on what authority. Because LPL does not expressly move for a stay pending filing of a motion to compel arbitration in

7

Boston, the Court will consider only whether it should exercise its limited power to enjoin Defendants from proceeding with arbitration in Nashville.

The Court concludes on the evidence presented that LPL has shown a likelihood of success on the merits of the issue whether the Representative Agreements are valid and enforceable. The Representative Agreements are signed by the parties. The causes of action Defendants pursue against LPL are predicated on the existence of duties arising from the Representative Agreements. Moreover, courts have consistently recognized the *prima facie* validity of forum selection clauses, and where the "choice of . . forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972); Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 & n.14 (1974); Carnival Cruise Lines, Inc. v. Eulala Shute, 499 U.S. 585, 593-595 (1991). A party seeking to avoid a forum selection clause in an arbitration agreement bears "a heavy burden of proof." The Bremen, 407 U.S. at 17.

Defendants presented no evidence to this Court that they were forced to agree to the forum selection clause in the Representative Agreements due to alleged fraud or undue bargaining power. See The Bremen, 407 U.S. at 14; Ferro Corp. v. Garrison Indus., Inc., 142 F.3d 926, 933 (6th Cir. 1998) (holding district court has power to consider claim of fraud in inducement of making agreement to arbitrate); Arnold v. Arnold Corp.-Printed Communications for Business, 920 F.2d 1269, 1276 (6th Cir. 1990) (same). While Defendants' NASD counsel, Mr. Kelvin, wrote in a letter to the NASD that the Representative Agreements contain a "poorly drafted, adhesionary and unenforceable choice of situs clause[,]" (Docket Entry No. 20 at 2), Defendants have not argued, nor

8

have they placed evidence before this Court, that the forum selection clause is unenforceable because it was obtained through adhesion

Section 7(C) of the Representative Agreements provides: "Any disputes under the Agreement, including interpretation of its terms and conditions, and any rights and obligations of the parties hereunder shall be arbitrated in accordance with the Rules of the National Association of Securities Dealers with such arbitration to occur in Boston, Massachusetts[ ]" Giving this contract clause its plain and ordinary meaning, the parties agreed to a set of procedural rules to govern the arbitration of any disputes–the Rules of the National Association of Securities Dealers–and to a site for arbitration of any disputes–Boston  Although the NASD Rules set forth a method for determining the situs of any arbitration, here the parties contractually agreed, before any dispute occurred, that arbitration of disputes would occur in Boston

"Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit  Just as they may limit by contract the issues which they will arbitrate . . . so too may they specify by contract the rules under which that arbitration will be conducted." Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 479 (1989); Westervelt v. Bayou Mgt., L.L.C., 2003 WL 22533672 *4 (E.D. La. Nov. 4, 2003) (same)  The parties so customized their agreements here to provide that arbitration would occur in Boston  Thus, LPL has shown a likelihood of success in showing that this contractual agreement, even if adhesive, is valid and enforceable  See Carnival Cruise Lines, Inc., 499 U.S. at 593-595; Volt Information Sciences, Inc., 489 U.S at 477 ("[The FAA] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms ")

9

This is not a case like <u>Prudential Securities, Inc. v. Thomas</u>, 793 F. Supp. 764, 765-767 (W.D. Tenn. 1992), cited by Defendants, where a customer sought to arbitrate a dispute under the rules of the American Arbitration Association through use of the so-called AMEX window, a provision in the Constitution of the American Stock Exchange. The parties' agreement provided that any dispute should be settled in arbitration in accordance with the rules of the AAA, without specifying any particular forum. The AMEX window provides that the customer may elect to arbitrate before the AAA "in the City of New York." Relying on <u>Bear, Stearns & Co. v. Bennett</u>, 938 F.2d 31 (2d Cir. 1991), the Tennessee district court understandably held that the location of the arbitration should be left to the AAA to decide under its rules. <u>Id.</u> at 767-768. Here, the parties contractually agreed to arbitrate in Boston. The <u>Westervelt</u> case, also cited by Defendants, is distinguishable because there the parties did not choose an arbitration forum, so the NASD chose the forum under its rules. <u>Westervelt</u>, 2003 WL 22533672 at *12-17.[3]

The conclusion that LPL likely can show that the forum selection clause is valid and enforceable is not inconsistent with the NASD Code itself. The NASD Code envisions that parties

---

[3] The Court notes that other cases cited by Defendants for the proposition that the situs should be left for the arbitrator to decide are not good law. See <u>United Steel Workers of America v. Saint Gobain Ceramics & Plastics, Inc.</u>, 467 F.3d 540 (6th Cir. 2006), *rehearing en banc granted, opinion vacated,* (6th Cir. Feb. 7, 2007); <u>Smith v. Dean Witter Reynolds, Inc.</u>, 102 Fed. Appx. 940 (6th Cir. 2004), *opinion amended and superseded by* <u>Smith v. Dean Witter Reynolds, Inc.</u>, 2004 WL 1859623 (6th Cir. Aug. 18, 2004). Several cases cited by Defendants construe the Labor Management Relations Act or collective bargaining agreements and do not concern arbitration under the FAA. See <u>Armco Employees Indep. Fed'n v. AK Steel Corp.</u>, 252 F.3d 854 (6th Cir. 2001); <u>Raceway Park v. Local 47, SEIU</u>, 167 F.3d 953 (6th Cir. 1999); <u>General Drivers, Salesmen and Warehousemen's Local Union v. Malone & Hyde, Inc.</u>, 23 F.3d 1039 (6th Cir. 1994); <u>Avco Corp. v. Mitchell</u>, 336 F.2d 289 (6th Cir. 1964). The case of <u>Dean Witter Reynolds, Inc. v. McCoy</u>, 995 F.2d 649 (6th Cir. 1993), decided before <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79 (2002), actually supports the position of LPL.

Case 3:07-cv-00183   Document 30   Filed 03/21/07   Page 10 of 14 PageID #: 274

may agree to a site for arbitration by providing in Rule 13213(a)(3) that the "Director may change the hearing location upon motion of a party, as set forth in Rule 13503." Moreover, Rule 13213(a)(4) provides: "After the panel is appointed, the panel may decide a motion relating to changing the hearing location." Because the NASD and the arbitration panel are permitted by Rule to entertain motions to change the venue of an arbitration hearing, the Court does not adopt Defendants' view that the forum selection clause is contradictory and ambiguous and as such should be construed against the drafter, LPL. The parties expressly agreed that any arbitration should take place in Boston, and this contractual agreement overrides the NASD Code.

The Court also does not accept Defendants' argument that the NASD, and not Defendants, chose the initial arbitral forum. Apparently unaware of the parties' prior agreement and pursuant to the NASD Code, the Case Administrator offered Defendants a forum in Charlotte, North Carolina, closest to their place of work, or Nashville, Tennessee, within Defendants' state of residence. Defendants chose Nashville and apparently did not disclose to the NASD Case Administrator that they had previously agreed that arbitration should take place in Boston. When LPL moved before the NASD to change the location to Boston, Mr. Kelvin for Defendants expressly rejected any notion that Boston was the proper forum, despite the parties' prior agreements. It is thus disingenuous for Defendants to now contend that NASD chose the forum and not them.

Further, the NASD's adherence to its determination of Nashville as a forum after counsel for the parties submitted letters arguing the merits of their respective positions does not indicate that NASD chose the forum instead of Defendants. The NASD attorney explicitly notified the parties that they could "raise a request to change the Nashville hearing location with the arbitration panel, once appointed. The arbitration panel has authority to determine the final hearing location under the

11

Code." (Docket Entry No. 22.) This ruling was essentially a determination to maintain the NASD's status quo until the initial hearing, preserving LPL's right to request a different forum before the arbitration panel.

The Court also does not accept Defendants' position that selection of an arbitration forum is a procedural issue left solely to the discretion of the NASD under <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 81, 84 (2002) (holding that arbitrator must decide whether the time limit rule applies because procedural questions which grow out of dispute and bear on its final disposition are presumptively not for the judge, but for the arbitrator, to decide.) In <u>Howsam</u> the Supreme Court drew a distinction between procedural questions arising under the NASD Code and "gateway disputes" that are ordinarily left to courts to decide, such as whether the parties are bound by a given arbitration clause or whether an arbitration clause in a binding contract applies to a particular type of controversy. <u>Id.</u> at 84-86. The question presented here is a "gateway dispute" about whether the parties' binding forum selection clause should be enforced. Under 9 U.S.C. § 4, Congress has given federal district courts "jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators." <u>Hammer</u>, 393 F.3d at 1225. Therefore, the Court concludes that the present controversy is not a procedural matter that should be left for the arbitrator.

Thus, the Court concludes that LPL has shown a likelihood of success on the merits of its contention that the forum selection clause requiring arbitration in Boston is valid and should be enforced. However, this Court cannot compel arbitration in Boston. At most, the Court could order that any further plans for arbitration in Nashville must cease.

12

**B. Showing of irreparable harm**

The Court concludes that LPL has not made the required showing of irreparable harm to warrant the issuance of a preliminary injunction at this time. The record shows that a panel of arbitrators has been chosen, but no further proceedings have taken place. Rule 13213 (a)(4) of the NASD Code allows LPL to make a motion to the arbitration panel seeking a change in the hearing location. Mr. Rosen, NASD's attorney, notified LPL's counsel of this option. There is no evidence before this Court that LPL has made a motion to the arbitration panel seeking a change in the location of the forum.

In the event LPL were to make such a motion and the arbitration panel were to grant it, preliminary injunctive relief in this Court would be unnecessary. Alternatively, if LPL makes such a motion and it is denied, the proper court forum for LPL to obtain an order compelling arbitration in Boston is in Massachusetts federal district court, not in this Court. Consequently, the Court concludes that a preliminary injunction would be premature where the arbitration panel has not been given an opportunity to consider whether the arbitration proceeding should be moved to Boston and where this Court is without authority to compel arbitration in Boston.

**C. Substantial harm to others and impact on the public interest**

In light of the Court's ruling that LPL has not shown irreparable harm, the Court need not address the final two factors: whether the injunction would cause substantial harm to others and its impact on the public interest. In any event, the Court concludes that the public has an interest in the enforcement of forum selection clauses, but it also has an interest in the efficient use of judicial and agency resources in resolving private disputes like this one. Issuing a preliminary injunction barring

13

arbitration in Nashville (especially when the Court is powerless to compel arbitration in Boston) and before LPL has even asked the arbitration panel to move the situs of the hearing would cause substantial harm to the interests of the NASD in the efficient and effective use of its own resources. The Court is less concerned about the impact of any injunction on Defendants because they might well have influenced the NASD's choice of forum if they had candidly revealed to the NASD at the outset that a forum selection clause existed when the NASD asked them to make a choice between Charlotte and Nashville. But Defendants did not do so in order to hedge their bets of obtaining a forum more favorable to them than Boston. Because the only harm Defendants identified in being required to arbitrate in Boston was increased cost, and where financial hardship caused by litigation in the selected forum is not a reason to declare the forum selection clause invalid, Moses v. Business Card Express, Inc., 929 F.2d 1131, 1138 (6th Cir. 1991), the Court concludes that consideration of the substantial harm likely to occur to others due to the issuance of an injunction and the public interest weighs against granting the motion for preliminary injunction.

## IV. **CONCLUSION**

Accordingly, for all of the reasons stated, LPL's Motion for Preliminary Injunction will be denied.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

14